TWENTY-ONE MINING CO. v. ORIGINAL SIXTEEN TO ONE MINE, Inc.

(Circuit Court of Appeals, Ninth Circuit. March 5, 1917.)

No. 2909.

1. MINES AND MINERALS ⊂═⊃38(7)—PROTECTION PENDING LITIGATION—DISSOLUTION—DISCRETION OF COURT.

    Ordinarily, when title to property is in dispute, and one of the parties has obtained an injunction against the use or waste thereof by the other, the injunction in effect binds both parties, and when the one obtaining the injunction proceeds to do acts of the nature of those which his adversary is prohibited to do, the court will in its discretion be justified in dissolving the injunction and refusing its aid.

    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 91.]

2. MINES AND MINERALS ⊂═⊃38(7)—DISSOLUTION—DISCRETION OF COURT.

    Complainant, who owned and operated a mine, was mining on a vein within the vertical plane lines of defendant's claim, asserting the right to do so on the ground that it had its apex in the surface of its own claim, and in its dip passed beneath the surface of the defendant's claim. Complainant was granted a temporary injunction, restraining defendant from continuing operations, but complainant, after entry of the order, commenced operations itself. Complainant had an organization of miners, and to cease work would cause great loss, and it kept accurate account of the tonnage and value of all ores extracted from the vein. Held that, in such case, though the right to the vein was in dispute, it

⊂═⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was not an abuse of discretion for the trial court to deny defendant's motion to vacate the injunction on complainant's recommencing work; the court offering defendant a cross-injunction in event of its giving an indemnifying bond similar to that executed by complainant.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 91.]

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Bill by the Twenty-One Mining Company, a corporation, against the Original Sixteen to One Mine, Incorporated. Complainant was granted a temporary injunction, and defendant's motion to dismiss was denied, although a cross-injunction was granted on condition that defendant furnish an indemnifying bond, and defendant appeals. Order affirmed.

The appellant and the appellee own adjoining lode mining claims. The appellee was mining on a vein within the vertical plane lines of the appellant's claim, asserting the right to do so on the ground that the vein had its apex within the surface of its own claim and in its dip passed beneath the surface of the appellant's claim. The appellant was mining, as the appellee alleged, on the same vein beneath the surface of its own claim at a lower level and at a point remote from the appellee's place of working. The appellant denied that the vein on which it was working had its apex in the appellee's claim, and asserted that the vein had its apex in its own claim. The appellee brought an action against the appellant to recover damages for extracting the ores on the vein, and at the same time, as ancillary thereto, filed its bill in equity to enjoin the continuation of the alleged trespass. The court below issued a temporary restraining order, and after a hearing issued a preliminary injunction against the appellant, upon the filing by the appellee of a bond in the sum of $30,000. Thereupon, upon the advice of its counsel, the appellee ceased its work on the vein within the vertical boundaries of the appellant's claim. Two months later it gave notice of a motion to compel the appellant to furnish a bond to indemnify the appellee against damages by reason of such cessation of its work. The court denied the motion. Thereupon the appellee notified the appellant of its intention to resume work, stating that its purpose was to raise the question of its right to an indemnifying bond from the appellant. After the appellee resumed work the appellant served its notice of a motion to dissolve the preliminary injunction, on the ground that the appellee had resumed mining, and thereby violated the spirit of its own injunction. The motion was denied, but the appellant was granted, if it so desired, a cross-injunction against the appellee upon furnishing an indemnifying bond in the sum of $30,000. This the appellant declined to do, and it took its appeal from the order denying its motion.

W. H. Metson, Frank R. Wehe, and Bruce Glidden, all of San Francisco, Cal. (Metson, Drew & Mackenzie and E. H. Ryan, all of San Francisco, Cal., of counsel), for appellant.

William E. Colby and Grant H. Smith, both of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The appellant contends that the function of the injunction was to maintain the status quo pending the litigation, and that it bound the appellee who applied for it as much as it did the appellant against whom it was directed, citing, among other authorities and text-writers, 3 Lindley on Mines, p. 2193, where it is said:

"It is a gross abuse of the process of the court for the complainant to disregard his own injunction, having, by means thereof, tied the hands of his adversary. This is particularly true where the purpose of the injunction is to maintain the property in statu quo during the suit; but such an injunction is not binding on the complainant, so as to subject him to the summary criminal proceeding for contempt, if he violates it. The defendant can either move to have the complainant's injunction dissolved because of the complainant's abuse of the process of the court, or, better, petition the court to force the complainant to restore the property, if possible, and enjoin him from any further acts."

To that text are cited Vanzandt v. Argentine Min. Co. (C. C.) 48 Fed. 770; Silver Peak Mines v. Hanchett (C. C.) 93 Fed. 76; Mowrer v. State, 107 Ind. 539, 8 N. E. 561; Haight v. Lucia, 36 Wis. 355. In the Vanzandt Case the bill alleged that the plaintiff owned a certain mine then in the possession of the defendant. On the plaintiff's application the defendant was enjoined from mining on the claim pending the suit. Thereafter the plaintiff ejected the defendant and took possession of the mine. Upon the defendant's application an order was made requiring the plaintiff to restore possession. Thereupon the defendant moved for an order requiring the plaintiff to show cause why he should not be punished for contempt in violating his own injunction. The court, Judges McCrary and Hallett sitting, said:

"The injunction did not by its terms, or of its own force, forbid the complainant to interfere with the possession of the mine pending the suit, and therefore he cannot be held to answer in this proceeding. It does not follow, however, that a complainant, in such a case as the present, can with impunity do the acts which, at his instance, the defendant has been restrained from doing. Where, as in this case, the evident purpose of the writ is to preserve the existing status of property in litigation until a final adjudicating can be had, it is gross abuse of the process of the court for the complainant to disregard his own injunction, after having by means thereof tied the hands of his adversary, and no doubt the court has ample power to prevent or redress such abuse. In this case the court did redress it, by ordering the complainant to restore the property to defendant, and to abstain from any further interference with the possession thereof pending the suit. If defendant had desired and asked a dissolution of the injunction, the court might have granted it, on the ground that complainant was no longer entitled to the exercise of the discretionary power of the court for his protection."

In Haight v. Lucia each party claimed to own certain land and the timber thereon. The plaintiff, after having obtained an injunction against the defendants, restraining them from cutting timber on the premises, entered upon the premises and felled a large quantity of the timber. The court said:

"At that time neither party had established a right thereto. In that respect they were on equal ground. If there were valid reasons for restraining the defendants from cutting the timber, it was proper, for the same reasons, to restrain the plaintiff also from doing the same act. Evidently the spirit of the injunction was to preserve the property in controversy, so that the prevailing party might have it unimpaired. The plaintiff invoked the extraordinary powers of the court to accomplish that purpose, and then, in entire disregard of the spirit and object of the injunctional order which he had obtained, attempted to seize and appropriate to his own use the most valuable portion of the property in controversy, before his right thereto had been adjudicated. This was a gross abuse by the plaintiff of the process of the court, which, to say the least, should have been severely censured by the court. Had an application therefor been made, the court would have been justified, had it

dissolved the injunction, and refused further to exercise its discretionary powers for the protection of the plaintiff. Courts should see to it that their process be not used as instruments of wrong and oppression."

In Mowrer v. State, in a similar case, the court said:

"Strictly speaking, the writ of injunction does not restrain the plaintiff. By its terms the writ ordinarily enjoins only the defendant. It does not follow, however, that the plaintiff can with impunity do acts which, at his instance, the defendant has been restrained from doing; and, where the purpose of an injunction is to preserve the existing status of property in litigation until a final adjudication can be had, it is a gross abuse of the process of the court for the plaintiff to disregard his own injunction, and to disturb the existing status of such property. The court granting the injunction has doubtless ample power to redress such an abuse by ordering the plaintiff to restore the status which he has disturbed, and requiring him to abstain from further interfering improperly with such property; also by dissolving the injunction, upon the ground that the plaintiff had forfeited his claim to the equitable relief which the injunction afforded him, in the event that his misconduct has been so gross as to justify such a proceeding."

In Maloney v. King, 30 Mont. 414, 76 Pac. 939, the court said:

"They [the defendants], being enjoined from working the disputed ground, desired that the plaintiffs should also be enjoined, so that the premises should remain in statu quo pending the litigation. However desirable such result would seem to be, it could have been attained in the original suit by petition on part of defendants, setting forth the facts and the reasons for such relief. Upon a hearing, if the court concluded that a proper showing had been made, it would undoubtedly have granted the relief sought."

In Johnson v. Hall, 83 Ga. 281, 9 S. E. 783, an injunction had been granted. Thereafter the plaintiff entered upon the land and commenced to cut the trees. The defendants filed a cross-petition, alleging title to the land, and alleged that the plaintiff was doing the very acts which they had been restrained from doing on his application. The court thereupon enjoined the plaintiff, but did not require the defendants to give a bond, as had been required of the plaintiff in the first injunction. The court said:

"Where both parties in good faith claim title to the same tract of land, and one of them is enjoined from entering or trespassing thereon upon the application of the other, the object of the injunction is to preserve the land in statu quo until the title is settled by the proper proceedings. The plaintiff has no more right to disturb the status quo than the defendants had; and it follows, as a matter of course, that, when the plaintiff undertook to commit the same acts that the defendants had been enjoined from committing, the court should have restrained him also, it appearing that both parties bona fide claimed the land."

The court proceeded to say that both parties should have been placed upon equal terms, and that defendants should have been required to give a similar bond to that required of the plaintiff.

[1, 2] The principle deducible from these decisions is that when the title to property is in dispute, and one of the parties to the suit has obtained an injunction against the use or waste thereof by the other, the injunction in effect ordinarily binds both the parties, and that when one obtains an injunction, and subsequently proceeds to do acts of the nature of those which his adversary is prohibited to do, the court will be justified in dissolving the injunction and in refusing further to ex-

ercise its discretionary powers for his protection. In all the authorities so cited there is a clear recognition that the power of the court so to deal with the party who violates his own injunction is discretionary, that in such a case an order made dissolving the injunction, or an order withdrawing the protection of the court, will not be held an undue exercise of the discretion, that the peculiar facts of each case must be dealt with as controlling the court's action, and that the dissolution of the injunction does not follow, as a matter of course or of absolute right, from the fact that the party who obtained it has disobeyed its commands.

It will be seen, also, that the facts in the case at bar differ to a certain extent from the facts in the cases cited, and that they present ground not found in those cases for the exercise of the discretion of the trial court to deny the motion to dissolve. In the Vanzandt Case the defendant was in possession. The plaintiff after enjoining it from mining, forcibly ejected it and proceeded to mine the ores. In the other cases cited the acts of the plaintiffs changed the existing status of the property in controversy. In the present case the court below, upon the complaint, the answer and the affidavits, found that, prima facie, it was shown that the vein on which both parties had been working had its apex in the appellee's claim. It was shown also that the appellee was working at a place remote from the place where the appellant was working and that it had an organization of miners, that if required to cease work on the vein it would have been compelled either to keep the miners employed at a considerable financial disadvantage or to discharge them, and that its loss in either event would be as great as that which the appellant might suffer from the injunction during the period of the litigation. It was further shown that from the time when it resumed work the appellee had kept accurate account of the tonnage and value of all ores extracted by it. Under these circumstances we would not be justified in holding that the trial court abused its discretion. On appeal to this court from an order of the trial court denying a motion to dissolve an interlocutory injunction the question is not whether this court, upon the showing made, would have allowed the motion, but it is whether it has been clearly shown that the trial court has abused its discretion and has plainly disregarded the facts, or has departed from the settled principles of equity established for its guidance in cases of this character. Vogel v. Warsing, 146 Fed. 949, 77 C. C. A. 199; American Grain Separator Co. v. Twin City Separator Co., 202 Fed. 202, 120 C. C. A. 644; Kansas City v. Sanitary Street Flushing Mach. Co., 224 Fed. 964, 140 C. C. A. 456.

The order is affirmed.